Fletcher, J.
This is a writ of entry, in which the demandants claim to recover a parcel of land or flats in Boston, being all that part of the flats belonging to lot number one, of the so-called “ Neck Lands,” as laid down on the plan made by John Pope, dated November 1st, 1785, now lying south-east of Harrison avenue, and between the same and low-water mark.
The demandants counted on their own seizin, and the tenants pleaded the general issue. The selectmen of Boston, in behalf and by the authority of the town, by their deed dated April 30th, 1785, conveyed to John May and thirteen other persons, a certain tract of land on Boston neck, in consideration that the grantees should erect and keep in repair certain prescribed sea-walls or barriers, upon the south-east and northwest sides of the neck, in order to protect the lands on the neck against the ineroachments of the sea. This deed was duly executed and delivered, and the grantees became duly seized and possessed of the granted premises.
These proprietors managed their lands thus owned in com mon, as a quasi corporation, and held meetings and kept records of their doings, under the statute of 1785, c. 53; and caused the lands so held to be divided into lots, and a plan thereof to be made by John Pope, which is dated November 1st, 1785. The lots were numbered from one to fourteen, the number of the proprietors; and the value of each was appraised by a committee appointed by the proprietors. At a meeting, held on the 20th of February, 1786, it was voted, that after the lots had been appraised, they should be sold at auction among the proprietors, for the most they would fetch over the appraisement. Accordingly, on the 30th of March, 1786, the lots were put up at auction, as appears by the records, and lot number one was bid off by Joshua Farrington, one of the proprietors, he bidding £16 for choice ; the other lots were also all bid off by the several proprietors, and a division of the land was thus *291 completely effected. A plan of this division, with the names of the proprietors of the respective lots, and the appraised value and sums given for choice, was entered at large on the records, Joshua Farrington being put down thereon as the proprietor of lot number one. The flats belonging to this lot form the subject of this suit.
Joshua Farrington, being thus the proprietor of lot number one, by his deed dated November 11th, 1785, conveyed a portion of the same, together with another lot which he owned adjoining called the “ Fortification lot,” to William and Josiah Brown. This deed contained all the usual covenants of warranty. The tenants maintain, that this deed conveyed to the Browns all the flats belonging to lot number one lying southeast of Harrison avenue; and it is admitted, that the tenants have all the estate in the demanded premises, that William and Josiah Brown had at the time of their decease. If the position of the tenants, that the deed of Farrington to the Browns conveyed all the flats south-east of Harrison avenue, is maintained, then the demandants cannot recover.
The demandants maintain, that if the deed of Farrington to the Browns conveyed any thing, it could be but a part of the flats of lot number one, and that the demandants are entitled to the residue. The demandants further insist, that the deed of Farrington to the Browns really conveyed no legal title to any thing, for the reason, as alleged, that in the division of their lands, by the proprietors of the neck lands, the requisitions of the statute of 1785, c. 53, entitled “ an act for the better managing lands, wharves, and other real estate lying in common,” were not complied with; the effect of which was, that the division was a merely paroi division, without authority of law, and that Farrington consequently had no legal title to lot number one, and of course could convey no legal title to the Browns.
Whether the forms required by the statute, after so great a lapse of time, might not be presumed, under the circumstances of the case, to have been complied with, though they do not appear of record, it is not necessary now to decide. The deed made by Farrington to the Browns of part of lot number one, *292 by metes and bounds, was not void, but was good against everybody but his co-tenants, and could only be avoided by them.
If the co-tenants of Farrington have not avoided his deed of the lot set off to him in severalty, then against all the rest of the world, his deed is good and effectual. But the demandants maintain, that the deed of Farrington was avoided and set aside by his co-tenants. It appears that after lot number one was bid off by Farrington, and set to him in the records, a deed of division dated March 1st, 1788, was executed by the proprietors, conveying the several lots, into which the lands had been divided, according to the records, as before stated, to the several individual proprietors; and that lot number one in that deed was conveyed to Caleb Davis, together with lot number four, which was originally bid off by Davis, when the proprietors bid for choice, as stated in the records.
The demandants maintain, that the co-tenants, by thus conveying lot number one to Caleb Davis, disaffirmed the original setting off of this lot to Farrington, and thus avoided his deed to the Browns. Such, perhaps, might be the conclusion, if the conveyance of this lot to Davis could not otherwise be fully accounted for and explained. But it appears, that after the conveyance to the Browns, and before the making of the partition deed, Farrington, though a man of high standing and character, was charged with a grave offence and fled from the country. It further appears, that Caleb Davis, on the 11th of December, 1787, levied an execution in his favor against Farrington upon lot number one, as the property of Farrington, and the remainder of the lot, which had not been conveyed to the Browns, was set off to Davis on this execution ; so that when the partition deed was made between the co-tenants, Farrington was out of the country ; Caleb Davis was the owner of a part of lot number one, and was one of the proprietors; and the Browns who had a deed of the other part of lot number one were not proprietors.
At the time when the partition deed was made, Farrington was not in the country, and could not execute or accept a deed; the Browns were not of the number of proprietors; and *293 Caleb Davis was one of the proprietors, and was the owner of a part of lot number one, derived from Farrington. Under these circumstances, in the partition deed, lot number one was conveyed to Caleb Davis. The co-tenants, by this conveyance, so far from having disaffimed the setting off of lot number one to Farrington, and avoided his deed to the Browns, have, as it clearly appears to the court, in fact, confirmed and established both. That such was their intention, is made manifest, beyond all doubt, by the fact, that Davis never made any claim to that part of the lot conveyed by Farrington to the Browns; but the Browns, and those claiming under them, nave always occupied the upland, from Washington street to the old sea-wall, according to the deed of Farrington. No reason is suggested and none appears, why his co-tenants should desire to deprive Farrington, or those claiming under him, of the lot which he had purchased, and which was set off to him, as appears by the proprietors’ records.
The conveyance of Farrington to the Browns being valid, Caleb Davis of course took nothing in the part of the lot so conveyed, under the partition deed; and the demandants of course take nothing in that part of the lot, by the conveyances made to them by the heirs of Caleb Davis. The demandants have the title to that portion of lot number one, which was set off to Caleb Davis in his execution against Farrington; and this is a good title, for the same reason that the conveyance to the Browns made a good title. The levy had precisely the same effect as the voluntary conveyance by Farrington.
The remaining question, therefore, is, whether the demand-ants have a title to any part of the demanded premises under that levy. The tenants maintain, that the deed to the Browns conveyed all the flats belonging to lot number one, south-east of Harrison avenue, which flats constitute the demanded premises. If this position is correct, then the demandants can recover nothing, and 'this depends on the construction of the deed. The southerly boundary of the premises, in Farrington’s deed, is expressed as follows: “ Southerly on land of Jeremiah Bridge within seven inches of his cellar wall, and running parallel with the same; ” that is, this line is to run in *294 the same direction with the cellar wall. No length of line is given, and no object to which it is to run; but it seems to the court, that it must run in that direction, so far as the grantor had a right to extend it, which was to the southerly line of the whole lot, and it would then run by that line to low-water mark, which was the eastern boundary.
With this understanding of the direction and extent of the southerly line, the extent of the grant may be readily ascertained. The whole description of the land granted is as follows, to wit: “on Front or Orange street, Westerly, there measuring one hundred and fifty-two feet; southerly on land of Jeremiah Bridge, within seven inches of his cellar wall, and running parallel with the same; easterly, on the sea, to low-water mark; and northerly on land belonging to the town of Boston, now under lease to Nathaniel Curtis of Boston aforesaid.” The import of this description is, that the deed conveys all the land and flats embraced within the two side lines, extended from the street which forms the westerly boundary to the sea at low-water mark, which forms the easterly boundary. It is difficult to see how any other construction can be given to the terms of the deed. The direction of the southerly line is clearly given, and as far as the grantor had a right to extend it, in that direction, he did extend it; and when it reached the limit of his right at the southern line of the whole lot, the grant must then be confined within the limits of his right on the south, and the boundary line as given on the north, and be held to convey all embraced within these two lines extended to the eastern boundary at low-water mark. Farrington had a perfect right to convey all the flats belonging to the lot to the Browns, if he thought proper to do so, with that part of the upland which he conveyed to them.
There is nothing in the deed of Farrington to the Browns, to limit the grant of lots as contended for in behalf of the demandants. In this deed, there is no reference whatever to the sea-wall, as forming any boundary of the premises granted. In the levy of the execution in favor of Davis against Farrington, the premises set off are bounded on the east by the seawall, and the same premises are bounded in the same way in *295 the deed of Davis to Bridge. But, in the deed of Farrington to the Browns, the sea-wall is not mentioned.
Running the southerly line of the premises in the deed from Farrington to the Browns in the direction given, until it strikes the southern line of the whole lot owned by Farrington, and on that line until it reaches low-water mark, which is the only construction the deed admits of, the description will embrace all the flats belonging to lot number one south-east of Harrison avenue, and thus entirely defeat the claim of the demandants to the premises demanded in the writ.

Judgment for the tenants.